## J. A. BAILEY

*v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed April 18, 1901.*

1. CONSTITUTIONAL LAW—*right to keep lodging house is a property right.* The right to entertain lodgers in a lodging house, and to fix, by contract with them, the price to be paid for such accommodation and the number who shall occupy the same room at the same time for sleeping, is a liberty and a property right.

2. SAME—*"due process of law" means a general law.* "Due process of law," as used in section 2 of article 2 of the constitution, providing that no person shall be deprived of liberty or property without due process of law, means a general public law, legally enacted, binding upon all members of the community under all circumstances, and not private laws affecting only the rights of private individuals or classes.

3. SAME—*what is not within the term "due process of law."* An enactment which deprives one class of persons of the right to acquire and enjoy property, or to contract with relation thereto, in the same manner as others under like conditions and circumstances are permitted to acquire and enjoy property, is not comprehended by the constitutional term "due process of law," and is prohibited by the provisions of section 22 of article 4 of the constitution, concerning special legislation.

4. SAME—*when an act is in contravention of constitutional guaranties.* An act which arbitrarily discriminates against one class in the transaction of a business of a lawful nature and leaves unaffected by the act other persons or classes engaged in acquiring property in a manner not distinguishable from that employed by those discriminated against, is in contravention of the constitutional guaranties respecting liberty and property.

5. SAME—*section 16 of State Board of Health act, concerning lodging houses, is unconstitutional.* Section 16 of the act on the State Board of Health, (Laws of 1899, p. 355,) providing that no more than six persons shall sleep in the same room of any lodging house at the same time, is unconstitutional, being a discrimination against lodging houses, in favor of hotels, inns or boarding houses.

6. SAME—*section 16 of State Board of Health act cannot be upheld as a police measure.* Section 16 of the State Board of Health act, prohibiting more than six persons from sleeping in the same room of any lodging house, cannot be upheld as a proper exercise of police power by the legislature, designed as a sanitary measure.

7. SAME—*when law will not be sustained as a health measure.* Rights of property will not be permitted to be invaded under the guise of a police regulation for the preservation of health when such is clearly not the object and purpose of the regulation.

8. LODGING HOUSES—*a lodging house keeper is not a hotel keeper.* A lodging house keeper is not, in a legal sense, an inn keeper, a hotel keeper or a boarding house keeper, and hence section 16 of the State Board of Health act is directed only against lodging house keepers, while inn keepers, hotel keepers and boarding house keepers are not within the purview of its prohibition.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding.

T. J. SCOFIELD, and CHARLES J. SCOFIELD, for plaintiff in error:

Section 16 of the State Board of Health act prohibits more than six persons from sleeping in the same room at the same time, and requires four hundred cubic feet of space for each of the persons sleeping in a room at the same time. A violation of this section is a misdemeanor, both on the part of the landlord or keeper and on the part of the lodgers. The word "lodging house," as used in this section, does not include an inn or a hotel, and probably not a boarding house. The law is therefore aimed at one class: the keepers of lodging houses.

The keeper of a lodging house is not an inn keeper. *Pullman Car Co.* v. *Smith,* 73 Ill. 360.

The right to receive lodgers in a lodging house, to contract with them as to compensation and to agree with them as to the number who shall occupy the same room at the same time for sleeping purposes, is a liberty and also a property right. Any abridgment of this right deprives the individual of liberty and property, and if such abridgment be without due process of law the act is unconstitutional. *Frorer* v. *People,* 141 Ill. 171; *Ritchie* v. *People,* 155 id. 98; *Braceville Coal Co.* v. *People,* 147 id. 66; *Gillespie* v. *People,* 188 id. 176; *State* v. *Loomis,* 115 Mo. 307; *Commonwealth* v. *Perry,* 155 Mass. 117; *Godcharles* v. *Wige-*

*man,* 113 Pa. St. 431; *Matter of Jacobs,* 98 N. Y. 98; 10 Am. & Eng. Ency. of Law, (2d ed.) 298, 299.

"Due process of law" does not mean a statute passed for the purpose of working the wrong. These words are held to be synonymous with the words "law of the land," and this means general public law binding upon all the members of the community under all circumstances, and not partial or private laws affecting the rights of private individuals or classes of individuals. *Millett* v. *People,* 117 Ill. 294; *Frorer* v. *People,* 141 id. 171; *Ritchie* v. *People,* 155 id. 98; *Eden* v. *People,* 161 id. 296.

There is no right of discrimination against the lodging house keeper and in favor of the inn keeper or hotel keeper, who is engaged in business of the same general character. No reason is apparent to justify the discrimination. It is special legislation, aimed at part of a class, without any reason for the discrimination, and therefore it is in violation of the plain provisions of the constitution. In addition to the authorities cited under the two foregoing points we refer the court to the following: *Ramsey* v. *People,* 142 Ill. 380; *Harding* v. *People,* 160 id. 459; *Chicago* v. *Netcher,* 183 id. 104; *Ruhstrat* v. *People,* 185 id. 133; *Noel* v. *People,* 187 id. 587.

The act in question is not a proper exercise of police power. The law will not allow the rights of property to be invaded under the guise of a police regulation for the promotion of health, when it is manifest that such is not the object and purpose of the regulation. *Millett* v. *People,* 117 Ill. 294; *Frorer* v. *People,* 141 id. 171; *Chicago* v. *Netcher,* 183 id. 104; *Austin* v. *Murray,* 16 Pick. 121.

H. J. HAMLIN, Attorney General, (C. S. DENEEN, A. C. BARNES, and E. J. SMEJKAL, of counsel,) for the People:

The police power embraces the protection of the lives, health and property of citizens, the maintenance of good order and the preservation of good morals. *Patterson* v. *Kentucky,* 97 U. S. 501.

It may be said to be that inherent and plenary power in the State which enables it to prohibit all things hurtful to the comfort, safety and welfare of society. *Lake View* v. *Cemetery Co.* 70 Ill. 191; *Meadowcroft* v. *People*, 163 id. 56; *Booth* v. *People*, 186 id. 48.

All rights, whether to things tangible or intangible, are subject to the general police power of the State. *Northwestern Fertilizing Co.* v. *Hyde Park*, 70 Ill. 634; *Cole* v. *Hall*, 103 id. 30; *Daniels* v. *Hilgard*, 77 id. 640; *Hawthorn* v. *People*, 109 id. 302; Cooley on Limitations, 57; 155 Ill. 98.

The fact that a law regulates trade or any business, or in some degree operates as a restraint upon the same, does not render it obnoxious to any constitutional provision. *Daniels* v. *Hilgard*, 77 Ill. 640.

The law of the land may expressly prohibit and make criminal the doing of an act which in the absence of such law would constitute a liberty or property right within the meaning of the constitution, even though such act be not within itself immoral. *Booth* v. *People*, 186 Ill. 48.

It is a rule of construction in this State that an act general in its terms and uniform in its operation upon all persons and subject matter in like situation is general, and not obnoxious to the objection that it is local or special legislation. *West Park Comrs.* v. *McMullen*, 134 Ill. 170.

The classification is not obnoxious as special legislation if the restraint imposed rests upon distinctions which differentiate the particular individuals of the class to be affected from the body of the community or from other classes. *Railroad Co.* v. *Ellis*, 165 U. S. 150; *Lasher* v. *People*, 183 Ill. 231; *People* v. *Supervisors*, 185 id. 297; *State* v. *Ashbrook*, 48 L. R. A. 265.

Mr. CHIEF JUSTICE BOGGS delivered the opinion of the court:

The act of the General Assembly entitled "An act to create and establish a board of health in the State of Illinois," approved May 28, 1877, in force July 1, 1877,

(Hurd's Stat. 1899, p. 1604,) was amended by the addition of four sections thereto by an enactment approved April 21, 1899, entitled "An act to amend an act entitled 'An act to create and establish a board of health in the State of Illinois.'" (Hurd's Stat. 1899, p. 1606.) Section 15 of the amendatory act provides the State Board of Health shall have supervision of "all lodging houses in cities of 100,000 inhabitants or more." Section 16 of the amendatory act is as follows: "It shall be unlawful for more than six persons to occupy the same room for sleeping purposes at the same time in any such lodging house, and no room in such lodging house shall be occupied for sleeping purposes which does not contain four hundred cubic feet or more of space for each person sleeping therein at the same time." A complaint was filed before a justice of the peace alleging that the plaintiff in error was the landlord of a "lodging house" at No. 39 Custom House place, in the city of Chicago, and that on the 26th day of November, 1899, he willfully and knowingly permitted more than six persons to occupy the same room for sleeping purposes at the same time in said lodging house, in violation of the provisions of said section 16, hereinbefore set out. The plaintiff in error was arrested on a complaint filed with a justice of the peace, tried and convicted of the offense purported to be set forth in the complaint, and a fine of $25 assessed against him. He prosecuted an appeal to the criminal court of Cook county, where, upon a hearing, he was again adjudged guilty and condemned to pay a fine in the sum of $100 and the costs in the cause. He prosecutes this writ of error to reverse such judgment of said criminal court.

The evidence established, without dispute, that the plaintiff in error kept a lodging house at No. 39 Custom House place, in Chicago, and on November 26, 1899, permitted nineteen persons to sleep in one room of the said lodging house, the dimensions of said room being seventy feet in length, sixty-two feet in width and thirteen feet

and three inches in height; that there were sixty-four beds in the room, of which nineteen were occupied on the occasion in question.

The only defense presented in the lower court was, that said section 16 was in contravention of the rights guaranteed to the plaintiff in error by the constitution of the State, and therefore void. Propositions of law to that effect were presented to the trial court, but were refused. The action of the court in passing upon the propositions of law is the sole error assigned in this court.

The guaranty of section 2 of article 2 of the constitution of 1870 is, that no person shall be deprived of liberty or property without due process of law. The term "property" includes every interest any one may have in any and everything that is the subject of ownership by man, together with the right to freely possess, use, enjoy and dispose of the same. (*Frorer* v. *People*, 141 Ill. 171; *Braceville Coal Co.* v. *People*, 147 id. 66; *Ritchie* v. *People*, 155 id. 98; *Gillespie* v. *People*, 188 id. 176; 19 Am. & Eng. Ency. of Law, 284, 285; *Booth* v. *People*, 186 Ill. 43.) The privilege of contracting to receive gains and profits for the right to use property granted to another is both a liberty and property right. (*Frorer* v. *People, supra.*) The right to make a reasonable contract with reference to the use of a thing is an attribute of property and a property right. (*Booth* v. *People, supra.*) The right to entertain lodgers in a lodging house, and to fix, by contract with them, the price to be paid for such accommodation and the number who shall occupy the same room at the same time for sleeping purposes, is a liberty and also a property right. Any restriction upon or abridgment of this right deprives the citizen of both liberty and property.

The Attorney General insists section 16 of the enactment in question, though it infringes the property right of the plaintiff in error, may be upheld as a proper exercise of the police power. In *Booth* v. *People*, 186 Ill. 43, we said (p. 48): "The State inherently possesses, and the

190—3

General Assembly may lawfully exercise, such power of restraint upon private rights as may be found to be necessary and appropriate to promote the health, comfort, safety and welfare of society. This power is known as the police power of the State. In the exercise of this power the General Assembly may, by valid enactments, —*i. e.*, 'due process of law,'—prohibit all things hurtful to the comfort, safety and welfare of society, even though the prohibition invade the right of liberty or property of an individual."

"Due process of law" means a general public law, legally enacted, binding upon all members of the community under all circumstances, and not partial or private laws affecting only the rights of private individuals or classes of individuals. An enactment which deprives one class of persons of the right to acquire and enjoy property, or to contract with relation thereto, in the same manner as others under like conditions and circumstances are permitted to acquire and enjoy property or contract with relation to it, is not comprehended within the true meaning of the words "due process of law," and is prohibited by the provisions of section 22 of article 4 of the constitution of 1870. The penalties of the section under consideration are leveled against one class,—the keepers of lodging houses. The keeper of a lodging house is not, in a legal sense, an inn keeper, a hotel keeper or a boarding house keeper. (*Pullman Palace Car Co.* v. *Smith*, 73 Ill. 360; 16 Am. & Eng. Ency. of Law,—2d ed.—p. 510.) Hotel, inn and boarding house keepers are given a lien upon the baggage of their guests by paragraph 42 of chapter 82, (Starr & Cur. Stat. 1896, p. 2581,) and keepers of inns or hotels and keepers of boarding houses are by the common law answerable under a different rule of liability for the loss of the effects of their guests. (16 Am. & Eng. Ency. of Law,—2d ed.—530-532.) Our statute in respect of the liability for the safe custody of the property of guests applies only to landlords and keepers of public inns and

hotels, and the keepers of the various places of public entertainment may so conduct their business as that they may bear the relation of an inn or hotel keeper to some of their guests and that of a boarding house keeper or lodging house keeper to others; but nevertheless, lodging house keepers constitute a class distinguishable from the keepers of other houses of public entertainment, such as hotels, inns, taverns or boarding houses. This legislation is directed only against lodging house keepers. Keepers of boarding houses, inns, hotels and taverns do not fall within the purview of its prohibition. If the enactment is a valid one, inn or hotel keepers and the keepers of boarding houses may lodge seven or any greater number of guests or patrons in the same room, at the same time, for sleeping purposes, as may suit their convenience, subject, only, to the consent of their patrons or guests, without incurring the penalties which, under the provisions of this enactment, would be visited upon a lodging house keeper should he allow more than six persons to occupy the same sleeping apartment at the same time. This is to discriminate against the lodging house keepers as a class, and to deprive them of liberty and a property right which other persons engaged in business of the same general character and similarly conducted may freely exercise without let or hindrance. As we said in *Frorer* v. *People, supra* (p. 181): "If A is denied the right to contract and acquire property in a manner which he has hitherto enjoyed under the law, and which B, C and D are still allowed by the law to enjoy, it is clear that he is deprived of both liberty and property to the extent that he is thus denied the right to contract."

In *Millett* v. *People*, 117 Ill. 294, an enactment which prohibited the owners and operators of coal mines from making contracts which other owners of property and employers of labor might lawfully make, was held unconstitutional and could not be maintained as a lawful

exercise of the police power. The same doctrine was reiterated in *Frorer* v. *People, supra.* In *Ritchie* v. *People, supra*, an enactment which prohibited contracts for the employment of females to work for more than eight hours in any one day in any factory or workshop where clothing, wearing apparel or articles of a similar nature were manufactured, was held to be partial and discriminatory in character, and void, as contravening constitutional guaranties, for the reason that other manufacturers and their employees, though engaged in other branches of industry, were not forbidden to so contract. In *Harding* v. *People*, 160 Ill. 459, an act which made "that an offense if committed by a person engaged in one branch of mining which if done by persons in another branch of the same business is lawful, without any reason for distinction between the two," was declared to be unconstitutional. In *Eden* v. *People*, 161 Ill. 296, we held a statute which made it unlawful for a barber to follow his ordinary pursuit on Sunday, and which did not place the like restriction on any other class of business, deprived persons following that avocation of property and unjustly discriminated against them, and could not be sustained as a valid enactment under the police power of the State, because of the unequal operation of the law. The doctrine of *City of Chicago* v. *Netcher*, 183 Ill. 104, is, an attempt to deny a property right to a particular class in a community where all other members of the community are left to enjoy it is an unwarrantable interference with constitutional rights, whether such denial is contained in a statute or in an ordinance passed under a statute.

The principle which may be deduced from the declarations of this court on the subject is, that an act which arbitrarily discriminates against one class in the transaction of a business of a lawful occupation, and leaves unaffected by such discriminatory enactment other persons or classes of persons engaged in acquiring property in a manner not distinguishable in character from that

in which the class discriminated against is employed, is in contravention of the constitutional guaranties under consideration.

The Attorney General concedes that the term "lodging house" and the words "inn," "hotel" or "boarding house" are none of them convertible terms or words, and that a distinction exists between these several institutions and a lodging house, but he insists that the act, though it has no penalties against the inn or hotel keeper or boarding house keeper, may be legally enforced against keepers of lodging houses as a sanitary measure, under the police power. Some lodging houses, as it is urged, may be, and doubtless are, the recognized abiding places of unclean, diseased and vermin-infected guests or patrons, who, together with the owners or keepers of the lodging houses, are wholly indifferent to sanitary conditions, rendering such houses sources of contagious and infectious diseases. But it cannot be asserted that all lodging houses are of this character; neither can it be said boarding houses, inns and hotels are not to be found which shelter the same class of patrons, and whose keepers are likewise indifferent to sanitary conditions. The public health is less endangered by a cleanly and well conducted lodging house than by a filthy, ill-managed, disease-breeding hotel or boarding house. The lodging of more than six persons in any one room in a cleanly lodging house cannot be condemned, from a sanitary point of view, any more than the lodging of a like number of guests in one room in a hotel or boarding house. If intended as a measure to protect health, the act should have been directed against the evil which threatens to introduce sickness or disease, whether found in a lodging house, boarding house or hotel, and as its penalties are not so leveled it can but be regarded as partial and discriminatory legislation. In *Frorer* v. *People*, *supra*, we said (p. 186): "The police power is limited to enactments having reference to the comfort, the safety

or the welfare of society, and under guise of it a person cannot be deprived of a constitutional right. It is impossible that, under that power, what is lawful if done by A, if done by B can be a misdemeanor, the circumstances and conditions being the same."

If the enactment is not referable to the police power, as being for the preservation of the public health, we would feel constrained to declare it unconstitutional because violative of section 13 of article 4, viz.: "No act hereafter passed shall embrace more than one subject, and that shall be expressed in the title." The title of the amendatory act is, "An act to amend an act entitled 'An act to create and establish a board of health in the State of Illinois,' approved May 28, 1877, in force July 1, 1877, by adding thereto four new sections, to be numbered fifteen (15), sixteen (16), seventeen (17) and eighteen (18)." There could be no valid provision in the amendatory act not germain or pertinent to the general subject of the original act, which is, the health and lives of the citizens of the State. If the act was passed for the purpose of the purification of elections, it should be declared unconstitutional on the ground that the subject and object of the legislation were not expressed in the title of the act. Moreover, the rights of property will not be permitted to be invaded under the guise of a police regulation for the preservation of health, when such is clearly not the object and purpose of the regulation.

We are constrained to declare the section of the enactment in question is in contravention of constitutional guaranties and provisions, and therefore inoperative and void.

The judgment will be reversed and the cause will not be remanded.                    *Judgment reversed.*