## CRIMINAL COURT OF BALTIMORE CITY.

Filed November 17, 1902.

STATE
VS.
MORRIS LEGUM.

John Phelps and J. M. Moses for the State.

Myer Rosenbush for the traverser.

RITCHIE, J.—

The first count of this indictment is under the Act of 1894, Ch. 302; the five other counts are under the Act of 1902, Ch. 101, generally known as the "Sweatshop Law," and they have all been demurred to on the ground that the Acts in question infringe upon the right of the citizen to the free use of his property, and upon his right of personal liberty, without due process of law, and thus violate the 14th Amendment to the Constitution of the United States, and the 23rd Article of the Maryland Declaration of Rights. It was conceded, however, during the argument that the first count is good.

Under the Code, Art. 27, Secs. 148 and 149, and the Amendatory Acts of 1894, Ch. 302, and 1896, Ch. 467, full provision is made for the sanitary conditions of all factories, manufacturing establishments and workshops in the State, and the chief purpose of the Act of 1902, as gathered from its terms, is to reach the manufacture of the articles therein mentioned (which comprise nearly every article of men and women's wearing apparel, and also cigarettes and cigars), in the homes of those who therein themselves manufacture such articles, or of those in whose homes others manufacture them.

The Act provides as follows:

1. That no room or apartment in any tenement or dwelling house shall be used;

2. For the manufacture of coats, vests, trousers, knee-pants, overalls, cloaks, hats, caps, capes, suspenders, jerseys, blouses, waists, waist-bands. underwear. neckwear, furs, fur trimmings, fur garments, shirts, purses, feathers, artificial flowers, cigarettes or cigars;

3. Except by the immediate members of the family living therein;

4. That such family is limited to the husband and wife, their children or the children of either;

5. That neither such family, nor any member thereof, shall use any such room or apartment for such purpose;

6. Without having first obtained a permit from the Chief of the Bureau of Industrial Statistics, stating the maximum number of persons which he may allow to be employed therein;

7. That such permit shall not be granted until after an inspection of the premises;

8. And such permit may be revoked by said Chief at any time when (in his judgment) the health of the community, or of those employed, or living, in such room or apartment, may require;

9. The Chief of the Bureau and his deputies have the right at all reasonable times to enter any rooms or apartments, where any goods are being manufactured, for the purpose of inspection, and the persons in control are required to furnish access thereto;

10. The penalty for any violation of the law is a fine not exceeding $100, or imprisonment not exceeding one year, or both.

11. Other provisions of the Act prescribe certain conditions upon which any person or corporation may hire or employ others to work at making the articles referred to; requiring a like permit, revocable in like manner, and also requiring all persons or corporations contracting for the manufacture of any of the articles in question, or giving out materials out of which they are to be made, to keep a register of the persons with whom they contract, or to whom they give out such materials.

The traverser is indicted for having manufactured coats, vests, &c., at his home without a permit, and for other acts in violation of the statute.

Subject to the police power of the State, that is, the power to legislate both as to property and persons, in such respects as the public health, safety, or morals may require, the citizen is entitled to the free and profitable use of his property, and his right to pursue any lawful trade or avocation in a lawful manner, is part of his right of personal liberty.

If necessary for the public welfare, restrictions may be placed upon the use of property, or upon the right to pursue the trade or avocation one may choose to follow, and such restrictions do not deprive the citizen of his property, or his liberty, without due process of law. The constitutional guarantees referred to are not construed as interfering with the proper exercise of the police power. Property must not be a menace to the public health, or used for purposes dangerous to public safety or morals. And so the various trades, callings and professions of the people may be regulated in respect to the conditions or locality, under which, or where, they may be prosecuted, to such extent as may be necessary to protect or promote the public health, safety or morals.

Police regulations, however, must be just and reasonable, and not oppressive or burdensome; they must not be arbitrary; they must be necessary for the public welfare, and must not extend beyond the evil to be remedied or guarded against.

If they exceed any of these limitations, then they deprive the citizen of his property or his liberty without due process of law.

In the light of these settled principles let us look again at the Act in question, and let it be assumed, as it was in the argument, (although somewhat a matter of inference), that its object is the preservation of the public health.

The Room or Apartment.—The Act embraces every room or apartment in any tenement or dwelling house. This is not the case of prohibiting or regulating some given work or occupation within a certain locality. The Act applies to every home in the State, and to every room in each home. It is not confined to such rooms as may be used as workshops, or to such as may otherwise be used for eating, or living, or sleeping purposes, or which may be occupied by sick or diseased persons. It applies to every room no matter what its conditions, or relation to other parts of the house.

The prohibition against the manufacture in every tenement or dwelling house, of any of the articles in question except by the family, and by the family except on the conditions prescribed, impairs the right to the free and profitable use of property, whether occupied by the tenant or owner, thereby reducing its value, and interferes with the right to pursue any lawful occupation, not injurious to others, in one's

own home, and unless this sweeping prohibition is demanded by the public health, it cannot be sustained.

The Family.—The husband and wife, their children, and the children of either, can so use such room or apartment only by first obtaining the permit; against all others the prohibition is absolute. The mother and father, the brother and sister, and every other relative of husband or wife, though permanent members of the household, as well as the outsider whose help may be needed, are excluded.

The Articles of Manufacture.—The manufacture of wearing apparel is one of the most common, useful and necessary occupations known to the people. It is a matter of common knowledge that its prosecution under ordinary conditions, is not injurious to the health of the public, or of those engaged in it, and it is not urged by the State that the making of cigarettes and cigars is so injurious.

It has in fact been decided by the Court of Appeals of New York in Jacob's Case, 98 N. Y. 98, that the manufacture of cigars is not in itself injurious to the public health.

The Inspection and Permit.—The permit is not to be granted by the Chief of the Bureau until after an inspection of the premises has been made. An inspection in what respects and to what extent? The Act does not define. Assuming that it is to be along sanitary lines, the Act does not prescribe the required sanitary conditions, nor is there anything in the Act under which the Chief of the Bureau is appointed (1892, ch. 29), which requires him to be a sanitary expert. Thus, even if it were competent for the Legislature to leave absolutely to the Chief of the Bureau the determination of what conditions may endanger the public health, it is left to one who may or may not be qualified to determine the matter.

But there is a far more important aspect of this feature of the statute to be considered, and that is, the arbitrary power conferred upon the Chief of the Bureau to give or withhold the necessary permit.

The manufacture of clothing is one of the important industries of the State, and the regular occupation of many of our citizens who do their work at their homes, is that of garment workers for the clothing factories. Besides these there are the small tailors, dressmakers, milliners and seamstresses throughout the State, who also work at their calling at their homes.

What are the sanitary conditions with which these thousands of our people must comply, before they can pursue the occupation by which they earn their living and support those dependent on them?

The Act does not prescribe a single one of them. As to these people thus working in their homes, it mentions no requirements, it provides no standard, it leaves the whole matter to the arbitrary determination of the Chief of the Bureau, without any rules to guide or control his action, or by which the uniform and impartial exercise of his power may be secured. The right of these people to earn their livelihood at their usual occupations is subject to the undirected and uncontrolled power of this Chief of the Bureau, and placed at the risk of his incapacity, favoritism, caprice and oppression. So far as any restraint is to be found in the Act, he gives or refuses the permit as he pleases. A statute "which clothes a single individual with such power hardly falls within the domain of law."

Mayor vs. Radecke, 49 Md. 217-230.

Yick Wo vs. Hopkins, 118 U. S. 356-372.

What has been said in reference to this power of the Chief to grant or refuse the permit, applies with equal force to the power given him to revoke it.

The Evil to be Guarded Against.— If the prosecution of any lawful work or occupation is in itself dangerous to public health, its prosecution may be regulated, or prohibited within certain localities. But the measure of the danger is the limit upon the exercise of the police power. If such prosecution does not threaten the public welfare in any respect, it cannot be subjected to burdensome regulations in the name of the public welfare.

The manufacture of clothing is necessary and common to civilized people the world over,, and, so far as known, it has never been suggested anywhere or at any time, that there was anything peculiar to this occupation that made it injurious to the public health, nor is

it contended now by the State that there is.

The theory of the State is that this Act was intended to reach the evils of the "sweat shop," which is said to be any room or apartment in a tenement or dwelling house, regularly used by the garment workers who live there and by other employees, in working, under the direction of some superintendent or foreman, upon the materials given out to them; and it is asserted in argument that among the evils of the sweatshop are the crowded and unsanitary conditions under which many of the garment workers pursue their occupation. But, if it be the sweatshop that is aimed at, then it ought so to appear from the terms of the Act, and the Act should define what is meant by a sweatshop, or at least describe the conditions that are to be guarded against.

If, moreover, the theory of the State be correct, then it is clear that the danger to be guarded against exists, not in the ordinary occupation of making wearing apparel, but in the unsanitary conditions under which some may make it. Such being the case the law should be framed to meet the conditions which create the danger. If common report be true, the general conditions of the sweatshop are a serious menace to the public health, and there is urgent need for appropriate legislation for their correction. But in order to reach the unsanitary conditions of the sweatshop, how can it be necessary or reasonable to subject to the same regulations places which are not sweatshops? Or why subject to burdensome restrictions every piece of dwelling property, and every home and family in the State?

What has been said as to wearing apparel applies in large measure to the manufacture of the other articles mentioned.

Statutes of Other States.—I have examined the statutes which have been passed along this line of legislation by ten other States, and I find the following limitations in some or the other of them, viz.: the law applies only to such rooms or apartments as may be used as workshops; or to such as are also used for eating, or sleeping, or living purposes; the law does not apply to the family occupying the room or apartment; a certain number outside of the family may so work in such room; the

law applies only when such goods are made to be sold; or where the work of the family is prosecuted as a regular occupation; it does not apply to the seamstress or tailor employed to make clothing in the home of the employer for the use of the family; or to goods made up on special order and received directly from the maker for personal use or wear; in some cases the law defines in full the sanitary requirements; in others the execution of the law is entrusted to the health officers. None of these limitations are to be found in the Act of 1902. Whether the incorporation of any or all of them would have relieved it from objection, is a question not now considered.

I am constrained to hold that the provisions of this Act so far considered are unreasonable, arbitrary and oppressive; the preservation of the public health does not demand them; they unlawfully interfere with the right of labor; with the right of the citizen "to pursue unmolested a lawful employment in a lawful manner;" they unlawfully invade the privacy of the home, and, without due process of law, they deprive the citizen of the free and profitable use of his property, and of his right to labor at any lawful work or occupation, not injurious to others, when and where he will, and thus infringe upon his right of personal liberty. Singer vs. State, 72 Md. 464; Long vs. State, 74 Md. 565-572; State vs. Broadbelt, 89 Md. 565; Luman vs. Hitchens, 90 Md. 14; Butchers' Co. vs. Cresent City Co., 111 U. S. 746-757; Lawton vs. Steele, 152 U. S. 136-8; Jacob's Case, 98 N. Y. 98; In re. Sing Lee, 96 Cal. 354; In re. Hong Wah, 82 Fed. R. 623; Bailey vs. The People, 190 Ill. 28-37; Ritchie vs. People, 155 Ill. 98; Tiedman S. & F. Control, Secs. 120-147.

The other provisions of the Act come within some of the objections to those already considered, or depend on, or were enacted chiefly with a view to enforcing, those that are invalid. Looking at the entire Act, I think all its substantial provisions are so related to, and dependent on, each other, that the Legislature had but one main object or system in view, and that without the provisions which are invalid the Act would not have been passed.

I therefore am of opinion that the whole Act of 1902 is void, and will

sustain the demurrer to all the counts founded upon it, overruling, on the concession of counsel, the demurrer to the first count, which is under the Act of 1894.