(No. 27199.—

METROPOLITAN TRUST COMPANY, Appellee, *vs.* PAUL F. JONES, Director of Insurance, *et al.,* ·Appellants.

*Opinion filed Sept. 24, 1943—Rehearing denied Nov. 16, 1943.*

GEORGE F. BARRETT, Attorney General, (WILLIAM C. WINES, of counsel,) for appellants.

ROTHBART & ROSENFIELD, (EDWARD ROTHBART, of counsel,) for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

The principal question in this case concerns the validity of an act of the General Assembly known as the Small Loans Act. (Ill. Rev. Stat. 1941, chap. 74, par. 30, sec. 12.) Attack is made upon that portion of section 12 which prohibits a licensee thereunder from pledging any note or security given by a borrower, except with a bank authorized to transact business in Illinois under an agreement permitting the Director of Insurance to examine the papers so hypothecated. A regulation of the Insurance Department in accord with section 12 is also attacked. Appellee, a trust company, by its complaint sought a decree enjoining the enforcement of the act and regulation. A decree was entered to that end and the Director of Insurance and the Supervisor of the Division of Small Loans have appealed.

Appellee's complaint alleges that various licensees under the Small Loans Act have endeavored to hypothecate

or pledge with it, as trustee, certain of their notes representing and evidencing loans of money made by them under the Small Loans Act, pursuant to the terms of a trust indenture agreed upon, by which notes so made and authenticated would be sold to various banks and investors, thus enabling said licensees to utilize their credit facilities, to the end that they be not forced to do business entirely on their own capital. The complaint also alleged its right to act as trustee in such instances as fiduciary and depository under the pledge of customers' notes, to secure as collateral supporting notes made by licensees and sold to the public, as a proper corporate activity of the plaintiff and a valuable business and property right, which the act takes away and thus deprives plaintiff of its property without due process of law and unjustly discriminates against trust companies in favor of banks. It is therefore charged that that portion of the act is a special law granting to banks special and exclusive privileges, immunities and franchises contrary to the constitution of the State of Illinois. The complaint also sets out the regulation of the Director of Insurance promulgated under the act. It is as follows: "Each note hypothecated under Section 12 of the Small Loans Act, must bear the following endorsement: 'This note is non-negotiable in form but may be pledged as collateral security with a bank authorized to transact business in the State of Illinois. If so pledged, any payment made to the payee, either of principal or of interest, upon the debt evidenced by this note, shall be considered and construed as a payment on this note, the same as though it were still in the possession and under the control of the payee named herein; and the bank holding this note as collateral security hereby makes said payee its agent to accept and receive payments hereon, either of principal or of interest.' " It is conceded that this regulation depends for its validity upon the constitutionality of the portion of the Small Loans Act complained of.

Under their assignment of errors, appellants insist and argue that, first, even if the exemption of banks alone from the general prohibition of the act be unreasonable, such would not render the entire provision void; that the general prohibition should be sustained and plaintiff being within that prohibition the injunction should be denied. It is further argued that the exemption of banks only from the general prohibition enacted by the provision is not an unconstitutional discrimination.

Our first inquiry concerns the validity of the last paragraph of said section 12 of the Small Loans Act wherein a licensee is required to pledge or hypothecate notes acquired in the regular course of the licensee's business only with a bank authorized to transact business in the State of Illinois. That portion of section 12 of the Small Loans Act complained of, is as follows: "No licensee shall pledge or hypothecate any note or security given by any borrower except with a bank authorized to transact business in the State of Illinois under an agreement permitting the Director of Insurance to examine the papers so hypothecated."

It is charged that this provision deprives appellee of its property without due process of law, contrary to section 2 of article II of our constitution and that it is in contravention of section 22 of article IV of the constitution prohibiting the enactment of local or special laws, granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise.

The term "property" includes every interest one may have in any and every thing that is the subject of ownership by man, together with the right to freely possess, enjoy and dispose of the same. (*Bailey* v. *People,* 190 Ill. 28; *Gillespie* v. *People,* 188 Ill. 176; *Ritchie* v. *People,* 155 Ill. 98; *Braceville Coal Co.* v. *People,* 147 Ill. 66; *Frorer* v. *People,* 141 Ill. 171.) The privilege of contracting to receive gains and profits for the right to use property granted to another is both a liberty and property right.

(*Frorer* v. *People,* 141 Ill. 171.) The right to make a reasonable contract with reference to the use of an article of property is an attribute of property and a property right. (*Booth* v. *People,* 186 Ill. 43.) Appellee has a right under its charter to invest its capital and contract to act as trustee in the handling of property of others, under a contract. This is a liberty and a property right. Any restriction upon or abridgement of this right deprives the owner of both liberty and property. *Bailey* v. *People,* 190 Ill. 28.

Appellants insist that the provision under consideration is a general prohibition with an exemption as to banks authorized to do business in Illinois; that the intent of the statute was and is to curb and control the evil which has arisen in the field of small loans at interest rates in excess of seven per cent, and that the General Assembly may prohibit those practices most likely to conduce to the evils, exempting practices which are in the judgment of the General Assembly less likely to result in the ills sought to be remedied. It is true, the General Assembly has such right. *Mutual Loan Co.* v. *Martell,* 222 U. S. 225, 56 L. ed. 175, and *Griffith* v. *Connecticut,* 218 U. S. 563, 54 L. ed. 1151, cited by appellants, so hold. Those cases, however, did not involve the question here presented, where it is charged that the General Assembly has made an arbitrary exemption without real difference between the subjects included and those omitted therefrom.

It is well settled that the power to regulate the making of small loans exists and the details of the legislation and the exemptions proper to be made rest primarily within the discretion of the General Assembly. Unless such regulation is so unreasonable as to interfere with property and personal rights of citizens, unnecessarily and arbitrarily, or is wanting in a reasonable basis for classification and distinction, it is within the power of the State. The classification of the subjects of such legislation, so long

as it has a reasonable basis and is not an arbitrary selection without real difference between the subjects included and those omitted from the act, does not deny to the citizen the equal protection of the laws. (*Watson* v. *Maryland,* 218 U. S. 173, 54 L. ed. 987.) The question here is whether the exclusion of trust companies from the exemption of the act is an arbitrary selection without real difference between them and banks, which are included. Appellants insist it is reasonable to exclude trust companies in the exemption from the prohibition for two reasons: first, trust companies do not loan their own capital but act as mere trustees, depositaries or nominees for unsupervised and anonymous individuals, whereas banks lend only their own money, and second, the degree of supervision to which trust companies are subject falls far short of that to which banks are subject.

In *Booth* v. *People,* 186 Ill. 43, this court said: "The State inherently possesses, and the General Assembly may lawfully exercise, such power of restraint upon private rights as may be found to be necessary and appropriate to promote the health, comfort, safety and welfare of society. This power is known as the police power of the State. In the exercise of this power the General Assembly may, by valid enactments,—*i. e.,* 'due process of law,'—prohibit all things hurtful to the comfort, safety and welfare of society, even though the prohibition invade the right of liberty or property of an individual." Due process of law contemplates a general public law, legally enacted, binding upon all members of the community under all circumstances, and not partial or private laws affecting only the rights of private individuals or classes of individuals. A law which deprives one class of persons of the right to acquire and enjoy property, or to contract with relation thereto, in the same manner as others under like conditions and circumstances are permitted to do, is not comprehended within the true meaning of the words "due process of law,"

and is prohibited by section 22 of article IV of the constitution of 1870. It seems clear that the General Assembly in exempting "banks authorized to do business in Illinois" from the prohibition of the act, intended thereby to limit the exception to institutions under supervision and examination. This court will take judicial notice that trust companies are under supervision by the same officer as are State banks. It is likewise a matter of judicial notice that trust companies are required to deposit with the State Auditor bonds approved by that officer, as security for the faithful performance of their duties.

Judge Cooley in his work on Constitutional Limitations, (1st ed. 253,) well observes: " 'Due process of law' does not mean a statute passed for the purpose of working the wrong." It is not doubted that laws may be enacted, properly, and without infringing this section of the constitution, which, by reason of peculiar circumstances, may affect some persons or classes of persons only, who were not before affected by such restrictions; but in such instances the circumstances must be so exceptional as to leave no others affected in precisely the same way upon whom a general law could have effect. (*Frorer* v. *People,* 141 Ill. 171.) In Cooley's Constitutional Limitations, (1st ed. 391,) it is said: "Distinctions in these respects should be based upon some reason which renders them important, like the want of capacity in infants and insane persons; but if the legislature should undertake to provide that persons following some specific lawful trade or employment should not have capacity to make contracts or to receive conveyances, or to build such houses as others were allowed to erect, or in any other way to make such use of their property as was permissible to others, it can scarcely be doubted that the act would transcend the due bound of legislative power, even if it did not come in conflict with express constitutional provisions." (*Starne* v. *People,* 222 Ill. 189.) This court in *Millett* v. *People,*

117 Ill. 294, upon this principle held it was not competent, under the constitution, for the General Assembly to single out owners and operators of coal mines, and provide that they shall bear burdens not imposed on other owners of property or employers of labor, or prohibit them from making contracts which it is competent for other owners of property or employers of labor to make.

To sustain legislative interference with the business of a citizen by virtue of the police power, it is necessary that the act have some relation to the subjects included in such power. If it is claimed the statute is referable to the police power, the court must be able to see that it tends, in some degree, toward the prevention of offenses or the preservation of the public health, morals, safety or welfare. It must be apparent that some such end is the one actually intended and that there is some connection between the provision of the law and such purpose. If it is manifest that the statute has no such object, but, under the guise of a police regulation, is an invasion of the property rights of an individual, it is the duty of the court to declare it void. *People* v. *Wilson*, 249 Ill. 195.

We are unable to see wherein the act complained of provides better protection to the necessitous borrower by restricting the pledge or hypothecation of his note with a bank, rather than with a trust company. The enacting clause of the act states the object to be to define, license, and regulate the business of making loans, permitting an interest charge greater than otherwise allowed, controlling the assignment of wages or salary when taken as security, and providing penalties. The object of the act seems to be to regulate those engaged in making small loans to necessitous borrowers for the protection of the borrowers. The only qualification or regulation with reference to the financial standing of the licensee, other than the section of the act under consideration, is the requirement that the licensee at each specified location of its business have avail-

ble for operation assets of at least $5000 as a prerequisite to the issuance of a license. The provision complained of specifically permits a pledge or hypothecation of notes or security given by a borrower, but restricts such pledge or hypothecation to banks authorized to transact business in this State. Paper acquired by licensees in the regular course of business under the Small Loans Act is property which the owner and holder has a right to pledge or hypothecate. Had the General Assembly intended to provide that all such paper be nonnegotiable, it could have so provided. It did not see fit to, in any manner, restrict the negotiability of such paper. The provision of the act designates banks authorized to do business in Illinois as a favored class to which such paper may lawfully be pledged or hypothecated. It in nowise appears that the borrower from a licensee is better protected by the pledge or hypothecation of his paper with a bank than he would be if the same were pledged with a trust company. If, as appellants contend, it was the intention of the General Assembly to limit the pledge or hypothecation of such paper to institutions subject to examination and control of a department of the State, this purpose affords no reasonable basis for discrimination against trust companies, for, as we have seen, they are likewise under such control of the State.

Appellants argue, if the exemption of banks is void, that provision only should be so declared, for it is separable from the balance of the act. It seems clear that the intention of the General Assembly, as expressed in the provision under consideration, was not to prohibit the pledge or hypothecation of borrowers' notes by pledgees, but to limit their pledge or hypothecation to banks. It also appears to have been the intention of the General Assembly to permit those engaged in the small loan business to utilize their credit and not to require them to supply all capital used in their business. In support of appellants' contention that

the invalidity of the provision complained of does not render invalid the balance of the act, they rely upon *People* v. *Stokes,* 281 Ill. 159, as a direct holding by this court, construing this same act, that even if a discrimination in favor of banks, trust companies and other institutions is void, the whole act does not fall. The *Stokes case* construed the 1917 act, (Laws of 1917, p. 553,) which contained no provision even similar to the one under consideration. In that case this court said: "In any event, plaintiff in error has not brought himself within the exempted class, and even if he had and the provisions making such exemption were to be held void for this reason, such fact would not render the whole act void but only such provisions void." In that case Stokes was charged with making a loan of $100 at a rate of interest greater than seven per cent, in violation of section 1 of the 1917 act, which made it unlawful to make any loan of money, credit, goods or things in action in the amount or value of $300 or less, at a greater rate of interest than seven per cent per annum, without a license from the Department of Trade and Commerce. Section 5a of that act provided that the act should not apply to any person, copartnership or corporation doing business under any law of this State or of the United States, relating to banks, trust companies, building and loan associations or pawnbrokers, or to wage-loan corporations organized under an act approved June 20, 1913. Stokes was found guilty and in this court argued that section 5a of the act, exempting banks, trust companies and others from the provisions of the act, was invalid. In refusing to pass upon that contention, this court used the language relied upon by appellants, saying that Stokes had not brought himself within the exempted class, and even if he had, and such provisions making such exemptions were held to be void, for that reason, such fact would not render the whole act void but

only such provision. In this case it does not appear that the General Assembly would not have enacted the statute without the last clause of section 12. The invalidity of that provision therefore does not render invalid other provisions of the section. The decree granting the relief prayed is correct and is affirmed.

*Decree affirmed.*