**Douglas Warren WEBSTER, Plaintiff,**

v.

**James F. REDMOND et al., Defendants.**

**No. 72 C 3005.**

United States District Court,
N. D. Illinois, E. D.

Dec. 23, 1977.

---

Terry Yale Feiertag, Chicago, Ill., for plaintiff.

John T. Mehigan, Robert J. Krajcir, Melvin Gaines, Chicago, Ill., for defendants.

## Memorandum

LEIGHTON, District Judge.

This litigation is the result of a dispute between a teacher, the Chicago Board of Education, its members, and certain of its executive employees, concerning the teacher's rights, as holder of a principal's certificate, to be the principal of a Chicago elementary school. Trial has been without a jury on a multi-count amended complaint which alleged that in connection with a vacant principalship defendants subjected the teacher to race discrimination, an unlawful employment practice, and deprivation of due process of law.

The teacher's claims are asserted under Title 42 U.S.C. §§ 1981, 1983, 2000e–3, and 2000e–5. Jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(3), and 1343(4). The teacher seeks declaratory relief as provided in 28 U.S.C. §§ 2201 and 2202. He alleges that the matter in controversy exceeds the sum or value of $10,000, exclusive of costs and interest and arises under the constitution and laws of the United States.

After hearing evidence consisting of the testimony of witnesses, excerpts from depositions, and exhibits offered and received for the parties, this court at various stages of the trial ruled in favor of defendants on the claims of race discrimination and unlawful employment practice. Findings of fact were made; conclusions of law reached; and judgments were entered, for defendants, on these claims. Having done so, the court decided that the only remaining question in this case is whether the teacher was denied due process of law when a vote of the Board deprived him of a school principalship, he being otherwise qualified, solely for the reason that once he was arrested and indicted for a felony, being the receiver of stolen property; but the indictment was dismissed because on his motion, it was determined that evidence the state was going to use against him was taken from his home by an unreasonable search and seizure. This question, and the issue it presents, arise from the following facts.

### I.

Douglas Warren Webster is a black American; and with the exception of a tour of duty with the United States Army from 1953 to 1955, he has been a lifelong resident of the city of Chicago. Since 1953, when he

was graduated from DePaul University with a degree of bachelor of arts in education, he has been a Chicago elementary school teacher. He has a master of arts degree from the same university; and, continuing his education, has accumulated in excess of 36 hours beyond the master's degree level at various institutions of higher learning in the Chicago area. He has worked toward becoming qualified for the position of school principal. Toward this end, he studied for, took all the examinations, passed them, and was granted a principal's certificate dated August 25, 1970. At the time of the trial of this case, Webster was on the principal's eligibility list of the Chicago Board of Education; and was, as he had always been qualified to be a school principal. Throughout his career in the Chicago school system, he has enjoyed a superior rating for the way he has performed his duties of a teacher, master teacher, assistant principal, and acting principal.

On January 21, 1971, while he was assigned to the Cook County Jail school maintained by the Board of Education, Webster was arrested and later indicted for the felony of being the receiver of stolen property, a ring worth more than $100 that had been taken in an armed robbery. This arrest, and later the charge, came to the attention of his superiors; and as a result, Webster was suspended from his duties as a Chicago school teacher. He employed a lawyer; and on March 5, 1971, filed a motion to suppress the evidence against him on the ground that it had been taken from his home by an unconstitutional search. The motion was heard; and a judge ruled that the evidence the state was going to use against Webster had been taken from his home by an unreasonable search and seizure in violation of his constitutional rights. The evidence was suppressed; and a short time later the indictment against Webster was stricken with leave to reinstate. No appeal was taken, although the ruling was reviewable under Illinois law.

In the meantime, Webster remained suspended from his duties as a school teacher. No charges were filed against him. Final-

ly, on August 11, 1971, the General Superintendent recommended to the Board that Webster be reinstated to his position with back pay from January 26, 1971, when he was suspended, to September 3, 1971, when he was to be reinstated. This was done; and Webster resumed his duties.

At about the same time, steps were being taken by which, consistent with Board guidelines, a vacancy in the principalship of the Delano Elementary School was going to be filled. Three qualified persons from the Board's principals eligibility list were interviewed by the Local Advisory Council. Webster's name was selected as the person to be recommended to the General Superintendent, and by him to the Board, as qualified to fill the vacancy. Therefore, on January 14, 1972, at an executive session of the Board, Webster's name was before it for a vote by which he was to be promoted from teacher to principal of the Delano School. After the name was proposed, and the information from Webster's career as a teacher was distributed to the Board, a deputy superintendent reviewed the arrest of January 21, 1971 and the charge that followed. The attorney for the Board completed the review with references to the motion to suppress, how the court ruled on it, and the dismissal of the indictment. Despite these facts, the Associate Superintendent in whose area the Delano School was located reiterated his desire to have Webster as a principal because of his superior rating as a teacher. The Superintendent and his entire staff supported Webster's promotion. However, in the discussion, two members objected to the Board promoting to a school principalship a teacher who had once been arrested and charged with a felony. The observation was made by one board member that although Webster had not been convicted of the charge, the indictment against him was dismissed "on a technicality"; that is, the case was not prosecuted because evidence illegally seized from his home was suppressed.

A vote was taken; four members were recorded as being for Webster's promotion to the school principalship; six against; one

passed.[1] Thus, although his qualifications to be a school principal were not otherwise questioned, Webster was denied the promotion only because he was once arrested, indicted for a felony, but never convicted. Following this vote, and one taken on April 26, 1972 that adhered to it, Webster was never again considered for a school principalship, although he was recommended for the position, and he has always held the certificate by which the Board of Examiners declared, and the Board of Education has recognized, that he is qualified for such a position. On numerous occasions, various members of local advisory councils sought to learn why Webster was not made the principal of their schools; but Board members, and members of the Board's administrative staff, responded by saying that he would never be made a principal; that they were not at liberty to give the reasons; that Webster "was involved in a legal matter"; and that, in any event, the reasons were personal.[2]

## II.

Based on these facts, Webster contends that his principal's certificate was a valuable property right and an interest in liberty reflected in the opportunity he had earned to a promotion from teacher to principal in the Chicago public school system; that the due process clause of the Fourteenth Amendment guaranteed him some form of notice and hearing before he could be deprived of that property and liberty; that the same constitutional amendment, and the law and public policy of the state of Illinois, prohibited members of the Chicago Board of Education from denying him a

principalship only because of an arrest, indictment and criminal prosecution that ended in a dismissal of the charge.

In support of these contentions, Webster argues that under Illinois law, appointments and promotions of teachers and principals are based only on merit. Once the Board of Examiners issues a principal's certificate and determines the merit qualifications of a teacher to be a principal, as it did in his case, the Board of Education has no authority to redetermine the merit of such a teacher for promotion. Webster points to the Illinois School Code, Ill.Rev.Stat.1971 ch. 122, § 21–1, which regulates the registration of teacher certificates, and provides that "[i]n determining good character under this section, any felony conviction of the applicant may be taken into consideration, but such a conviction shall not operate as a bar to registration." Thus, he insists that the votes of the Board of Education barring him from promotion to a school principalship, only because of an arrest and indictment for a felony, were arbitrary state action that deprived him of due process of law in violation of the Fourteenth Amendment to the constitution of the United States.

The Board members who remain defendants in this case[3] contend that Webster's principal's certificate represented neither a property right nor a liberty interest that was protected by the due process clause of the Fourteenth Amendment. Illinois law, they argue, vests them with broad discretion in the appointment and promotion of teachers and principals, a discretion that goes to the heart of Webster's contention

1. Between January 14 and April 26, 1972 when the Board next met, one member who had voted against Webster's promotion changed her mind. This, however, did not affect the outcome because her motion at the April meeting, one that would have led to the Board giving further consideration to Webster's promotion, was not adopted.

2. On November 22, 1974, in accordance with an Illinois statute, the record of Webster's arrest and indictment was expunged. This fact, however, was never brought to the Board's attention since the General Superintendent, relying

on the Board's previous votes, has never recommended Webster for promotion.

3. In its earlier rulings, at the close of plaintiff's case in chief and at the close of all the evidence, this court entered judgments in favor of all defendants and dismissed the suit as to members of the Chicago Board of Education who were not in office on January 14, 1972. Therefore, this suit under 42 U.S.C. § 1983 proceeds only against those who were members of the Board when Webster was denied the principalship.

that under state law he had a property right or liberty interest in the principal's certificate issued to him by the Board of Examiners. They insist that decisions of Illinois reviewing courts reveal Webster had no right or interest that was adversely affected by the Board's vote when on January 14, 1972 he was denied a promotion from a teacher to a principal. The Board members argue that decisions of the court of appeals of this circuit, and of the Supreme Court of the United States, show that Webster had no liberty interest that was infringed by his being denied a school principalship. Therefore, these Board members conclude that on these facts, Webster was not denied procedural due process nor equal protection of the laws by any action taken by the Board of Education on January 14, 1972 with regard to his promotion from a teacher to the principal of a Chicago public school.

### III.

■ A property interest in employment can be created by an ordinance, or by an implied contract. In either case, however, the sufficiency of the claim of entitlement must be decided by reference to state law. *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). For due process purposes, a person's interest in a benefit is "property" if there are rules or mutually explicit understandings that so support his claim of entitlement that he can invoke such rules and understandings in a hearing. *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Liberty, the concept on which Webster relies, recognizes two interests of a public employee: first, protection of the employee's good name, reputation, honor, and integrity; second, his or her freedom to take advantage of other employment opportunities. *Lipp v. Board of Education of City of Chicago,* 470 F.2d 802, 805 (7th Cir. 1972). Generally, it is said that property interests are not created by constitutions, state or federal. Rather, they are created and their dimensions defined by rules and understandings that stem from state law; rules or understandings that secure benefits and support claims to their entitlement. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

The laws of Illinois do not require a teacher to have a principal's certificate before he or she can teach in a Chicago public school. A principal's certificate represents an investment of time and money; it is earned by the teacher who seeks career advancements and desires the advantage of other employment opportunities within the Chicago public school system. It is awarded only to the teacher who, consistent with the rules of the Board of Examiners, holds an advanced degree from a recognized institution of higher learning, and who has successfully passed approved programs of academic and professional preparation. To obtain such a certificate, the successful teacher must pass an examination consisting of two parts, one written and the other oral. *People ex rel. Loughry v. Board of Education of the City of Chicago,* 342 Ill.App. 610, 97 N.E.2d 615 (1951); *compare People ex rel. Cook v. Board of Education of the City of Chicago,* 295 Ill.App. 41, 14 N.E.2d 520 (1938); I.L.P. Schools § 242. The certificate is valid for a period determined by state law and rules of the Board of Examiners. During that period, the certificate cannot be revoked or suspended, except on written notice to the teacher who must be afforded a hearing and a fair opportunity to invoke the rules and understandings promulgated by the Board of Examiners. This right to a hearing is enjoyed by certificate holders in Chicago and throughout the state of Illinois. See Ill.Rev.Stat.1971, ch. 122, § 21–23; see Annot. 48 L.Ed.2d 996. This right is important because as long as the teacher holds the certificate, he or she has the benefit of being listed on the principals eligibility list from which selections will be made of those to be promoted to principalships in the Chicago public schools as vacancies occur. This entitlement is a valuable right; it is the only means by which the teacher may recover the investment in time and money represented by the certificate. Chicago public school principals are paid more than are school teachers. Thus, by

earning a principal's certificate through investment of time and money, acquisition of additional academic qualifications, by taking and passing requisite examinations, a teacher like Webster pursues his chosen profession and exercises freedom in taking advantage of other employment opportunities within the system that employs him. See Board of Regents v. Roth, 408 U.S. 564, 573–74, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

The right to follow a chosen profession free from unreasonable governmental interference is property under the federal constitution. See, e. g., United States v. Robel, 389 U.S. 258, 88 S.Ct. 419, 19 L.Ed.2d 508 (1967); Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959); Friendship Medical Center, Ltd. v. Chicago Board of Health, 367 F.Supp. 594, 603 (N.D. Ill.1973). In Illinois, state law recognizes that the term "property" includes every interest one may have in any and everything that is the subject of ownership by man; it is a word of general import which applies to every specie of right and interest capable of being enjoyed as such and on which it is practicable to base a money value. Metropolitan Trust Co. v. Jones, 384 Ill. 248, 51 N.E.2d 256 (1943); compare Citizens Utilities Company of Illinois v. Metropolitan Sanitary District, 25 Ill.App.3d 252, 322 N.E.2d 857 (1974).

In the judgment of this court, Illinois state law, the rules and the mutually explicit understandings between teachers and the Board of Examiners concerning claims of entitlement under a principal's certificate, make the certificate issued to Webster "property" as that term is used in Illinois law. Father Basil's Lodge v. City of Chicago, 393 Ill. 246, 65 N.E.2d 805 (1946); compare Young v. Brashears, 560 F.2d 1337 (7th Cir. 1977). That certificate is also protected by the concept of liberty. In a society such as ours, liberty is a broadly defined term. Miller v. School District No. 167, Cook County, Ill., 354 F.Supp. 922, 925 (N.D.Ill.1973). "[I]t denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, . . . . and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men." Meyer v. State of Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923).

Notwithstanding these principles, the board members argue that Webster's liberty interest was not adversely affected by them or their agents when they denied him a principalship because his good name, reputation, honor and integrity were zealously protected by their policy of never revealing to the public the reasons for the nonappointment of a teacher to a principalship. However, this court has found that after Webster was denied the promotion, and until sometime in September 1973, members of the Board's administrative staff, and Board members, told persons from various community councils who inquired that Webster would never be appointed to the position of a school principal; that they were not at liberty to tell why; that he was involved in a legal matter; and that, in any event, the reasons for his not being promoted were personal.

It would be naive to conclude that this kind of information, distributed as it was throughout the community, did not injure Webster's good name, honor, and integrity as a teacher. Moreover, it is clear from the Board's actions, that Webster's liberty was adversely affected. The "freedom to take advantage of other employment opportunities" to which the court referred in Lipp v. Board of Education of City of Chicago, 470 F.2d 802, 805 (7th Cir. 1972), does not mean for Webster the seeking of employment outside the Chicago school system. In the context of this case, the concept of liberty means for Webster freedom from arbitrary governmental interference so he can go as far in the hierarchy of the school system as his ability will allow him. However, only because he was once arrested, indicted for a felony but never convicted, he has been effectively barred from being what he wants to be, a school principal. It is clear, therefore, that his liberty interests were

strongly implicated. *See Austin v. Board of Education of Georgetown, Etc.*, 562 F.2d 446 (7th Cir. 1977).

■ More important to this case, however, is the fact that on January 14, 1972 when his name was presented to the Board for promotion, Webster had every reason to expect appointment to the position for which he had been recommended. He had been selected by the local advisory council. He was recommended by the General Superintendent and the Deputy Superintendent. He had the approval of the responsible Associate Superintendent. He had the support of the Board's administrative staff. All of these responsible Board subordinates knew of the arrest and indictment. No one claimed he lacked the qualifications for the principalship. No one said that his brief brush with crime in any way impaired his ability to be a good Chicago principal. Under these circumstances, the Board's action in denying Webster the promotion infringed the right he had under Illinois law that "[e]very person is presumed innocent until proven guilty." *People v. Weinstein*, 35 Ill.2d 467, 220 N.E.2d 432 (1966); *People v. Johnson*, 4 Ill.App.3d 539, 281 N.E.2d 451 (1972); Ill.Rev.Stat.1971, ch. 38, § 3–1. The Board's vote was arbitrary state action that effectively took from Webster all the benefits and entitlements he had earned when he qualified for his principal's certificate.

■ The touchstone of due process of law is protection of the individual from arbitrary action of the government. *Dent v. West Virginia*, 129 U.S. 114, 123–24, 9 S.Ct. 231, 32 L.Ed. 623 (1889). It would have been arbitrary and unreasonable for the State of Illinois to have adopted a statute which, for school principalships, had an across the board disqualification as to all teachers who had felony convictions. See *Smith v. Fussenich*, 440 F.Supp. 1077 (D.Conn.1977). In fact, the Illinois legislature has declared that in determining the good character of those who teach, or as principals, supervise in the public schools of the state, "any felony conviction of the applicant may be taken into consideration, but such a conviction shall not operate as a

bar to registration [of a certificate]." Ill. Rev.Stat.1975, ch. 122, § 21–1. Therefore, this court concludes that when by their vote, members of the Chicago Board of Education denied Webster a school principalship only because he was once arrested and indicted for a felony but not convicted, they deprived him of his property and liberty in violation of the due process clause of the Fourteenth Amendment to the United States Constitution.

### IV.

■ This being the case, judgment will be entered in Webster's favor on the issue this court has resolved. The question remaining, then, is what relief should be granted that will remedy the wrong committed when his civil rights were violated. This is a suit brought under 42 U.S.C. § 1983, a federal statute under which Webster could sue for the invasion to his rights that has occurred. See Comment, Developments in the Law: Section 1983 and Federalism, 90 Harv.L.Rev. 1133 (1977). In such instances, a federal court has the power to use any available remedy that will make good the wrong done. *Bell v. Hood*, 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *Donahue v. Staunton*, 471 F.2d 475 (7th Cir. 1972), *cert. denied*, 410 U.S. 955, 93 S.Ct. 1419, 35 L.Ed.2d 687 (1973). And in such cases, a district judge has broad equitable discretion in fashioning a remedy. *Decker v. North Idaho College*, 552 F.2d 872, 874 (9th Cir. 1977). Accordingly, this court rules that Webster shall have the following relief.

■ First, as compensatory damages the remaining defendant Board members shall pay him a sum that would place him, so far as money can do it, in the position in which he would have been if they had promoted him to a school principalship on January 14, 1972. *Lee v. Southern Home Sites Corporation*, 429 F.2d 290, 293 (5th Cir. 1970). This amount is to be calculated in a manner that will take into account the salary of a principal like the one at the Delano Elementary School from January 14, 1972 to the date of the judgment in this case, less Webster's

earnings as a teacher. *Compare McBeth v. Board of Education of DeVall's Bluff School District No. 1, Arkansas*, 300 F.Supp. 1270 (E.D.Ark.1969).

Second, the defendant Board members will be ordered to appoint Webster, immediately, to an elementary school principalship, retroactive to January 14, 1972. This is an appropriate remedy in a case like this one. *Compare Burton v. Cascade School District Union High School, No. 5*, 512 F.2d 850 (9th Cir.), *cert. denied*, 423 U.S. 839, 96 S.Ct. 69, 46 L.Ed.2d 59 (1975); *Cooley v. Board of Education of Forest City School District*, 453 F.2d 282 (8th Cir. 1972).

Third, in the event the Board members will not or cannot promote Webster to a school principalship, then he is entitled to be paid, as compensatory damages, an amount of money, calculated on his life expectancy, which he would earn during the period of his working life, had he been made the principal of the Delano Elementary School on January 14, 1972. *See Connell v. Higginbotham*, 305 F.Supp. 445 (M.D.Fla. 1969), *aff'd in part, rev'd in part on other grounds*, 403 U.S. 207, 91 S.Ct. 1772, 29 L.Ed.2d 418 (1971); *compare Hegler v. Board of Education of Bearden School District, Bearden, Arkansas*, 447 F.2d 1078 (8th Cir. 1971).

Fourth, as further compensatory damages, Webster is entitled to be paid an amount of money for the invasion of his liberty interests which occurred when he was denied the principalship on January 14, 1972. For a school teacher, promotion to a principalship is professional achievement; it is the realization of freedom of upward movement in the hierarchy of employment opportunities within the school system that employs him. The money amount of this element of compensatory damages will be determined by the court when the judgment in favor of Webster is entered.

Fifth, Webster is entitled to recover from defendant Board members an amount for the payment of reasonable attorneys fees, and reimbursement of his expenses in this litigation. Section 2 of the Civil Rights Attorneys Fees Award Act of 1976, 42 U.S.C. § 1988, applies to this case, although it was pending when that statute was adopted. An award of attorneys fees under this new statute is proper unless such relief will result in manifest injustice, or there is a statutory direction or legislative history to the contrary. *Bond v. Stanton*, 555 F.2d 172 (7th Cir. 1977). This is true even though the legal services in question were rendered prior to the effective date of the amendatory act. *Gary W. v. State of Louisiana*, 429 F.Supp. 711 (E.D.La.1977). It is true in this case that the Board members involved did not act with malice when they violated Webster's civil rights; but their prelitigation obduracy, and their obstinate defense to his claims, made this protracted suit necessary. The general scheme for relief which this court has fashioned in its discretion would be defeated if out of what he recovers Webster is compelled to pay his attorneys fees and expenses of this litigation. In determining this element of the relief to be granted, one of the considerations must be "the relative financial positions of the parties at the time of the constitutional violation, which in the case at bar weighs in favor of allowing attorneys fees . . . ." *Donahue v. Staunton, supra* at 483. Also, this court observes that a case like this one benefits all certificate holding teachers in the Chicago public schools.

Therefore, for all of these reasons, an appropriate judgment order, consistent with the views expressed in this memorandum, and complying with the requirements of Rule 58, Fed.R.Civ.P., may be tendered to the court for approval and entry.

So ordered.