Village of Monsanto, Illinois, Plaintiffs-Appellants, v. Francis Touchette, Supervisor, Town of Centreville, and Ex-officio Treasurer of the Road and Bridge Fund of Centreville Township, St. Clair County, Illinois, and Frank H. Kazilek, Highway Commissioner of the Town of Centreville, Defendants-Appellees.

Gen. No. 65–15.

Fifth District.

October 25, 1965.

Elmer C. Weihl and Edward G. Maag, both of East St. Louis, for appellants.

John R. Sprague, of Belleville, for appellees.

EBERSPACHER, P. J.

The Village of Monsanto instituted suit against Francis Touchette as Supervisor of the town of Centreville and as such ex-officio Treasurer of the Road and Bridge Fund of Centreville Township and Frank H. Kazilek as Highway Commissioner of the Town of Centreville. The relief sought by plaintiff was a declaratory judgment declaring that the plaintiff Village of Monsanto be entitled to receive one-half of the annual payment made by the Union Electric Company of Missouri to defendant Francis Touchette, Supervisor and ex-officio Treasurer of the Road and Bridge Fund of Centreville Township for the years 1957 through 1961, inclusive, and all years thereafter which annual payment had been made and is being made under the provisions of Illinois Revised Statutes, Chapter 111⅔, Section 28a, Illinois Revised Statutes of 1961, amended June 15, 1955; and also pursuant to an order, entered on July 20, 1955, in case No. 42613 of the Illinois Commerce Commission.

A temporary injunction was granted restraining disbursement of the 1962 payment pending the outcome of this litigation and the plaintiff prayed that the defendant Francis Touchette as ex-officio Treasurer of the Road and Bridge Fund pay over one-half of said payment amounting to $5,215.84 to the plaintiff forthwith. The trial court denied the relief prayed and entered judgment against the plaintiff for costs; from which judgment plaintiff appeals.

The facts are not in dispute. Prior to amendment of "An Act concerning Public Utilities," Chapter 111⅔ Ill Revised Statute, by addition of section 28(a), the Town Collector of Centreville Township and the County Collector of St. Clair County, Illinois regularly remitted to the Village Treasurer of Monsanto, Illinois, 50% of the total amount of taxes for road and bridge purposes which they collected on the assessed valua-

tion of the capital stock of Union Electric Power Company. This was done pursuant to the provisions of Chap 121, Sec 65, Illinois Revised Statutes, which, prior to its amendment on June 8, 1959, read in part as follows, to wit:

"All items of tax levy of any town or district authorized by Sections 56 and 58 of this Act shall be extended by the county clerk as one tax upon the collector's book and shall be paid to the treasurer of the road and bridge fund by the collector as fast as the same is collected, except such rate per cent as shall be allowed for collecting same; provided that one-half the tax required to be levied in Section 56, on the property lying within a city, village or incorporated town in which the streets and alleys are under the care of the corporation shall be paid over to the treasurer of the city, village or incorporated town, to be appropriated to the improvement of roads, streets and bridges, either within or without the city, village or incorporated town, and within the township under the direction of the corporate authorities of the city, village or incorporated town: . . ."

The omitted portion of section 65 contains certain provisions with which we are not here concerned.

After Chapter 121, Section 65, Illinois Revised Statutes was amended in June, 1959 by enactment of the Illinois Highway Code, the amended section being chapter 121, sec 6–507, the pertinent part of which reads as follows:

"All items of tax levy of any district authorized by Sections 6–501, 6–503 and 6–504 of this Code shall be extended by the county clerk as one tax upon the collector's book and, except as hereinafter provided in this Section, shall be paid to the

treasurer of the district by the collector as fast as the same is collected, other than such rate per cent as shall be allowed for collecting the same.

"One half the tax required to be levied by Section 6–501 of this Code, on the property lying within a municipality in which the streets and alleys are under the care of the municipality shall be paid over to the treasurer of the municipality, to be appropriated to the improvement of roads or streets, either within or without the municipality and within the road district under the direction of the corporate authorities of the municipality . . . ."

Following the enactment of section 28a of "An Act concerning Public Utilities," (Chapter 111⅔ Ill Revised Statute) in 1955, the Union Electric Company of Missouri instituted proceedings before the Illinois Commerce Commission pursuant to section 28a whereby it sought approval by the Commission for the transfer of all of the property, assets and franchises of Union Electric Power Company. These proceedings were in Case No. 42,613 before the Illinois Commerce Commission and on July 20, 1955, the Commission granted consent, authority and approval for the acquisition by Union Electric Company of Missouri of such property, assets and franchises under the conditions as set forth in section 28a.

Section 28a, supra, is as follows:

"If a corporation incorporated under the laws of a foreign state shall petition the Commission for authorization to acquire by purchase, lease, merger, consolidation or otherwise all or substantially all the franchises, licenses, permits, plants, equipment, business or other property of a public utility incorporated under the laws of

Illinois, whose capital stock is subject to assessment under the provisions of the General Revenue Law of Illinois, the Commission shall impose, as a condition to such acquisition, payment annually by such foreign corporation, its successors or assigns, of an amount equal to the amount of taxes legally extended against the assessed valuation of the capital stock of such Illinois public utility in the year immediately preceding the year in which such acquisition occurs. Such annual payment shall be in addition to any other fees and taxes required by law. If such acquisition occurs prior to April 1 in any year, the first such annual payment shall be made in the next calendar year. If such acquisition occurs on or after April 1 in any year, the first such annual payment shall be made in the second following calendar year. The obligation to make such annual payments shall continue as long as such foreign corporation, its successors or assigns, owns, controls, operates or manages within the state of Illinois the franchises, licenses, permits, plants, equipment, business or other property of the Illinois public utility so acquired, or any replacement, renewal or extension thereof or addition thereto. Such annual payment shall be made to the taxing districts whose territorial limits, at the time such payment is required to be made, include the place where the principal office of such Illinois public utility was located at the time of such acquisition, for use for such corporate purposes of such taxing districts as their governing bodies may order. The amount of the payment to each of the several taxing districts shall be in the same ratio to the total required annual payment as the ratio of the rate at which taxes of such taxing district for the preceding year have been extended to the total of the

rates extended for all of the taxes of such taxing districts for the preceding year. Such annual payment shall be made by such foreign corporation, its successors or assigns, to the respective treasurers of such taxing districts within 30 days from the date of delivery by the County Clerk to the Collector of the books for collection of taxes. Such foreign corporation, its successors or assigns, shall within 30 days after such annual payments have been made, file with the commission duplicate receipts of the respective treasurers of such taxing districts to which such payments were made."

Prior to the acquisition of the properties of Union Electric Company of Missouri, the assessment on the capital stock tax of Union Electric Power Company was paid by it to the Town Collector of the Town of Centreville and the County Collector of St. Clair County, Illinois, who disbursed said taxes to the various taxing districts within the territorial limits of the Village of Monsanto, Illinois, where the principal office of Union Electric Power Company was located. The total amount paid to the various taxing districts for capital stock tax for the tax years 1954 and 1955 was $402,187.05, and the annual payment made by the Missouri Corporation was in an identical amount each subsequent year.

Every taxing district situated wholly or partly within the Village of Monsanto has since August, 1957, received its proportionate share of the annual payment made by Union Electric Company of Missouri except that the defendant township treasurer paid no part of the annual payment of the Missouri Company to the Village of Monsanto.

It is to be noted that section 65, chapter 121, provided "that one half the taxes required to be levied in

■■■■■■■■■

Section 56 and collected for road and bridge purposes on the property lying within an incorporated village" should be paid over to the treasurer of such village. The new section 6–507 of the Illinois Highway Code provides "one half of the tax required to be levied by Section 6–501 of this Code on the property lying within a municipality" shall be paid over to the treasurer of the municipality.

Section 56 (supra) and section 6–501 (supra) provided and provide for the highway commissioner to make the levy for general road and bridge taxes, certification of the amount levied to the county board, approval of the amounts levied, and extension of the approved amounts as a tax by the County Clerk. Since both section 65 and the new section 6–507 made and make no provision for payment of any funds, whether they be taxes or payments, other than those specifically enumerated to either a village treasurer or the treasurer of a municipality; whether the amounts paid by the Missouri Corporation are payments, (as described in Section 28a, Chapter 111⅔) or a tax (as argued by plaintiffs), or even amounts paid in lieu of taxes, is not important in this case; because the sole authority for distribution of funds, otherwise distributable to the township or district treasurer of the road and bridge fund, to the village treasurer, is contained in the former section 65 and section 6–507, and in both those sections the funds to be paid to the village treasurer are limited to taxes *levied by the highway commissioner,* on the first Tuesday in September, and *approved by the County Board* and *extended by the County Clerk* as road taxes.

■■■ The enumerations of "one-half of the taxes required to be levied in Section 56" and "one half of the tax required to be levied by Section 6–501 of this code" made in former section 65 and presently in section 6–507 of Chapter 121 of the Illinois Revised Stat-

utes exclude all others not mentioned, Howlett v. Doglio, 402 Ill 311, 83 NE2d 708. We believe that the Legislature by such enumeration in the Statute dealing with highways, intended the enumeration to be exclusive, and that the fundamental principle of statutory construction embodied in the maxim "expressio unius exclusio alterius" applies; particularly since the context of neither the former road and bridge act, nor the Illinois Highway Code shows a different intention.

The Village of Monsanto urges that a reasonable construction of Section 28a Chapter 111⅔, is that the obvious intent of the Legislature was to permit a nonresident public utility to do business in Illinois and to acquire all of the assets, including the capital stock, of a resident public utility, providing that no taxing body would suffer loss of revenue from capital stock tax levied on the resident public utility and that the various taxing bodies should continue to receive revenue equivalent to the capital stock tax levied in the year 1954, assessed on the capital stock of such resident utility. We find no case in Illinois in which section 28a has been construed, and do not agree with appellant's contention that it was construed by the Supreme Court in the disciplinary proceeding entitled, In Re Browning, 23 Ill2d 483, 179 NE2d 14, in which that Court said "The purpose of the bill was to authorize the company to transact business in Illinois" and nothing more.

The General Assembly, it must be presumed, was aware of the fact that a foreign corporation pays no capital stock tax in Illinois; but it must equally be presumed, that the General Assembly was aware of the fact that a part of the tax levied by the highway commissioner, was payable to a village or municipal treasurer only because of the special provision of section 65, chapter 121.

To adopt the construction urged by appellants would require a holding to the effect that section 65, chapter 121, which was in effect in 1955 when section 28a (supra) was enacted, was by the enactment of section 28a, amended by implication; or, in the alternative, that the legislative intention is so strongly indicated in section 28a (supra), that we read into it sufficient language to provide that a part of the payment provided therein for the township, be paid by the township to the municipal treasurer.

 Due to the nature and purpose of the Public Utilities Act it is difficult for this Court to comprehend how its amendment by adding section 28a, could impliedly amend the series of laws having to do with roads and bridges or taxation for road and bridge purposes, or distribution of taxes levied for such purpose. The Public Utilities Act is in derogation of common law, and nothing should be read into it by intendment. Consumers Sanitary Coffee & Butter Stores v. Illinois Commerce Commission, 348 Ill 615, 181 NE 411. It is complete in itself, Illinois Central R. Co. v. Illinois Commerce Commission, 397 Ill 323, 74 NE2d 545, and is subject to repeal or amendment of the Legislature at any time that the Legislature sees fit in the public interest to so do. It has historically dealt with the regulation of public utilities in connection with rates and service to the public and has never been the legislative vehicle by which taxes were imposed, levied or distributed. Its purpose has been to maintain a general control over the operation of utilities in the State to the extent of preventing them from exacting from their patrons unjust, unreasonable, and discriminatory rates, and the theory of regulation of public utilities is protection of the public and the assurance of adequate service on the one hand, and, on the other, a fair opportunity to the utility to, by business economy, secure a reasonable return from such

400

service. Ill. Central R. Co. v. Ill. Commerce Commission, supra. Being in derogation of common law it is to be strictly construed, People v. Norman Acceptance Co., 17 Ill App2d 215, 149 NE2d 653, Chicago Pump Co. v. Lakeside Engineering Corporation, 296 Ill App 126, 15 NE2d 929.

■ Implied amendments are not favored, Swettman v. Remington Rand, 65 F Supp 940, and ordinarily it is only where the terms of a later statute are so repugnant to an earlier statute that they cannot stand together that the former is regarded as amended to the extent they are in conflict, Ill. Central R. Co., v. Franklin County, 387 Ill 301, 56 NE2d 775. Here section 28a makes no mention of the distribution of road and bridge taxes levied by the highway commissioner nor the part of road and bridge taxes to be paid to a municipal treasurer by the provisions of former Section 65, but provides for payments by the foreign utility in addition to taxes required by law; here the Village is not complaining that it did not receive its fair ratio of the payments in accordance to the taxes it had previously levied—but only that it has received no part of the payments made to the township in ratio to the taxes the township has previously levied for road and bridge purposes; the foreign utility is not joined as a party, and apparently the village authorities have no complaint as to the manner, amount, and as to whom the foreign utility makes its payments pursuant to section 28a and the Commission order; but only that the township has failed to pay to the village a part of the payment which it received by virtue of the provisions of Section 28a.

■ ■ We do not consider that section 28a purports to provide for a distribution of taxes levied by the highway commissioner, and approved by the County Board, and extended by the County Clerk. It only purports to provide for certain payments and the ratio

401

in which those payments are to be made to taxing bodies, based on the extension of levied taxes in a previous year. We do not find it inconsistent with section 65 or its codification in sec 6–705 of the Illinois Highway Code, nor repugnant to those sections. Both acts can be so construed as to give force and effect to each—they are not repugnant and section 28a, Chapter 111⅔, enacted later than section 65, chapter 121 does not purport to do what section 65 did, and since section 6–507, Chapter 121 is a reenactment of Section 65 enacted subsequent to Section 28a, and is not repugnant to Section 28a, the two can stand together.

We cannot go beyond the plain wording of section 28a and legislate into it what we might surmise the legislature would have done if it had thought of the particular situation existing in this particular case; nor in the absence of clearly expressed intent can we provide language to include a portion of the payments of the foreign utility, with the portion of the road and bridge taxes levied by authority of section 6–507, to be paid to the Village of Monsanto, by the township treasurer.

 The purposes for which public moneys may be paid out by any public official are limited by statute, and, in fact there must be statutory authority, either express or strongly implied, for the township treasurer to pay any of the public money in his hands to the village treasurer; obviously the authority to pay to the Village a part of the payments provided by Section 28a (supra) is not expressed, nor can we say that such authority is sufficiently implied, to say that the Village of Monsanto is entitled to one half of the annual payment made by Union Electric Company of Missouri to the defendant treasurer of the Road and Bridge Fund of Centreville Township.

 Section 6–507 of the Illinois Highway Code makes a particular enactment with reference to a dis-

tribution of taxes levied by the township for road and bridge purposes; Section 28a of the Public Utilities Act makes a general enactment for annual payment in addition to other taxes required by law and provides to whom such payments are to be made and in what amounts, based on a former capital stock tax of a predecessor business. The particular enactment must be operative, and the general enactment taken to affect only such cases within its general language as are not within the provisions of the particular enactment. Stephens v. Chicago, B. & Q. R. Co., 303 Ill 49, 135 NE 68.

The judgment of the Circuit Court of St. Clair County is affirmed.

MORAN and GOLDENHERSH, JJ., concur.