IRIS M. MAITER *et al.*, Plaintiffs-Appellees and Appellants, *v.* THE CHICAGO BOARD OF EDUCATION *et al.*, Defendants-Appellees.—(DISTRICT #21 PARENT EDUCATION COUNCIL *et al.*, Intervenors-Appellants and Appellees; MIDWEST COMMUNITY COUNCIL *et al.*, Intervenors-Appellees.)

First District (3rd Division)   No. 77-423

Opinion filed October 10, 1979.

Ronald S. Cope, of Ancel, Glink, Diamond & Murphy, for appellants.

Michael J. Murray, Richard E. Girard, John L. Wren, Christine Cheatom, John Elson, James O. Lautturner, and Mark A. Holbert, for appellees.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:
This is an appeal from an order entered in the Circuit Court of Cook County which clarified the procedures to be used by the board of

education in the appointment of principals in the Chicago public school system.

The plaintiffs, principals in the school system and individuals on the 1970 and 1974 eligibility lists for principal, filed a complaint for declaratory judgment on June 12, 1975. The complaint alleged that the rules and procedures employed by the board of education under which it may obtain the nomination of a person for principal by a local nominating committee were in violation of the School Code.

The School Code provides that appointments and promotions of teachers, principals and other educational employees in cities of over 500,000 inhabitants shall be made for merit only. (Ill. Rev. Stat. 1977, ch. 122, par. 34—84.) Subsequent to the enactment of this provision in 1917 (the Otis Law), the board of education appointed persons to the position of principal from the principals' eligibility list in rank order. Rank order was determined by the score achieved on an examination administered by the board of examiners. (Ill. Rev. Stat. 1977, ch. 122, par. 34—83.) This method of appointment continued to 1970.

On March 25, 1970, the board of education adopted procedures establishing "nominating committees of local school councils" in order to involve local communities in the selection of school principals. Pursuant to these procedures, if there were five vacancies for principals, the names of the first five candidates in rank order on the eligibility list were presented to the nominating committees for consideration. The committees rated the candidates in order of preference, and the board attempted to honor the requests. On October 14, 1970, the board determined that rank on the eligibility list should not be considered either in presenting candidates to the nominating committees or in the assignment of principals.

The relief sought by the plaintiffs was a declaration that the rules and procedures establishing nominating committees of local school councils were in violation of the School Code, the fourteenth amendment to the United States Constitution, and section 2 of article I of the Illinois Constitution. In addition, the plaintiffs asked the court to enter an order directing the board to make all appointments to the position of principal in rank order from the eligibility lists prepared by the board of examiners.

On September 28, 1976, the trial court entered an order granting leave to members of various community organizations and school parents councils to intervene in this suit. In their answer to the complaint, the intervenors adopted the responses that the board set forth in its answer.

The plaintiffs filed a motion for summary judgment, and the defendants and intervenors responded with their answers and objections. Subsequent to several hearings on the motion, the trial court entered its

judgment order on December 20, 1976. In its order the trial court found that the Otis Law was passed in 1917 in order to do away with favoritism, partisanship and cronyism in the selection of principals. It also found that rank order appointment of principals was abhorrent because it precluded community input and that the procedures establishing community nominating committees set forth no ascertainable standards to be employed in the selection of nominees by the committees. The trial court ordered:

"1. That appointment of a person to the position of principal is to be made on the basis of merit, as required by Ill. Rev. Stat., Ch. 122, §34—84.

2. That rank order on the principals' eligibility examination need not be used by the Board as the sole criteria of merit in the appointment of principals to individual schools, provided however, that until a uniform system of community input is established appointments to principals shall be in rank order commencing with appointments in rank order from the oldest existing principal list (1970)."

The intervenors appealed from that portion of the order which required the board to appoint principals in rank order until such time as the board established a uniform system of community input. Subsequently, the intervenors filed a motion to dismiss their appeal because of mootness, and we granted the motion.

The plaintiffs appealed from the portion of the order which provided that rank order on the examination need not be the sole criteria of merit in the appointment of principals to individual schools. In addition, the plaintiffs appealed from the order of September 28, 1976, permitting the members of community organizations and school parents councils to intervene in this action.

Effective October 1, 1977, section 34—8.2 was added to the School Code for cities of over 500,000 inhabitants. This provision validates the use of nominating committees in the selection of principals. The section provides as follows:

"A. Before the general superintendent shall recommend or the board shall vote on the appointment of a principal, the general superintendent and board may obtain the nomination of a person or persons to fill the position of principal by a local nominating committee.

B. A local nominating committee, when authorized by board rules and regulations, may consider, interview and nominate only those persons for the position of principal who appear on the appropriate eligibility list prepared by the board of examiners or those principals who consent to be considered for a transfer. The

recommendations of the local nominating committee shall not discriminate against any person based upon race, color, creed, national ancestry, sex, ethnic heritage or religious beliefs.

C. The board may adopt rules and regulations regarding the formation of and procedures to be followed by local nominating committees; these rules and regulations shall assure that at least 60% of the members of each committee shall be parents or guardians of children in the affected school." (Ill. Rev. Stat. 1977, ch. 122, par. 34—8.2.)

Section 34—84 of the code requiring appointment for merit only remains unchanged.

In consideration of the amendment to the School Code authorizing the use of nominating committees, the following issues are presented for review:

1. Whether appointment "for merit only" requires rank order appointments from the eligibility lists prepared by the board of examiners.

2. Whether the passage of section 34—8.2 repealed the requirement of rank order appointment, thereby rendering moot all issues raised in this case.

3. Whether the trial court erred in permitting members of community organizations and school parents councils to intervene in this suit.

I

In 1915 the board of education adopted a rule which prohibited membership in or affiliation with labor unions by teachers. The Illinois Supreme Court upheld this regulation, ruling that the board of education had the absolute right to employ, to decline to employ or to re-employ any applicant for any reason whatever or for no reason at all. *People ex rel. Fursman v. City of Chicago* (1917), 278 Ill. 318.

Subsequently, the Illinois legislature enacted the Otis Law, which provided in part that the board must appoint teachers and principals for merit only. Ill. Rev. Stat. 1977, ch. 122, par. 34—84.

Nowhere in the School Code has "for merit only" been defined. In its answer the board concedes that from the time of the enactment of the Otis Law in 1917 to 1970, appointments to the position of principal were made in rank order from the principals' eligibility list. The plaintiffs argue that by applying the doctrine of contemporaneous construction in interpreting the statute, "for merit only" requires appointment in rank order.

Because the statute does not define "for merit only" and because there exists no legislative history to assist us in the interpretation of this provision, we must examine the principles of statutory construction. We

agree with the plaintiffs that the doctrine of contemporaneous construction is a reliable principle to apply in construing the meaning of "for merit only."

■■ ■ Pursuant to the doctrine of contemporaneous construction, the meaning of a doubtful statute can be determined by examining the continuous interpretation of that statute by the executive officers charged with its administration and enforcement, the courts and the public. (2A Sutherland, Statutes and Statutory Construction §49.03, at 233 (4th ed. 1973).) The conclusiveness of the interpretation depends on whether the interpretation originated from a reliable source, the interpretation was made at or near the time of the enactment of the statute, and the interpretation has continued for a long period of time and received acceptance and following. (2A Sutherland, §49.04, at 235-36.) In addition, when a statute that has received a contemporaneous interpretation is re-enacted, this construction is presumed to be the correct interpretation of the law. 2A Sutherland, §49.09, at 256.

■■ The statute in the instant case directs the board to appoint principals for merit only. From 1917 to 1970 the board interpreted this provision as requiring rank order appointment. Certainly this interpretation originated from a reliable source, was made immediately following the enactment of the statute, and continued for approximately 53 years. In addition, the legislature re-enacted this provision in 1945 and 1961 while this interpretation was attached to it. We conclude, therefore, that section 34—84 of the School Code requires appointment to the position of principal in rank order from the principals' eligibility list.

We are aware of the recent decision of the United States Court of Appeals for the Seventh Circuit which reaches a contrary conclusion concerning the meaning of "for merit only." In *Webster v. Redmond* (7th Cir. 1979), 599 F.2d 793, the Chicago Board of Education refused to appoint the plaintiff to a position as principal despite his possession of a principal's certificate. The plaintiff filed suit in the Federal court alleging, among other charges, that the board had deprived him of his property in violation of the due process clause of the fourteenth amendment. The district court agreed and entered judgment in the plaintiff's favor. *Webster v. Redmond* (N.D. Ill. 1977), 443 F. Supp. 670.

The court of appeals reversed the district court and found that the plaintiff possessed no protectible property right in an appointment as a principal. In reaching this conclusion, the court found it necessary to consider whether Illinois law required the board to appoint a candidate as principal when his name reached the top of the eligibility list. The court concluded:

"In order to resolve the questions before us we need not definitively decide what the phrase 'for merit only' means in the

Illinois law. It is sufficient if we can state with certainty that, whatever its meaning, it does not create an entitlement to a principalship under Illinois law, and that we can do." 599 F.2d 793, 801.

■ Although we respect the opinion of the court of appeals, we note that the decision makes no reference to the doctrine of contemporaneous construction, the doctrine upon which we rely in resolving this issue. For this reason, we decline to concur with the court of appeal's holding in *Webster.* The general rule is that decisions of United States district and circuit courts are not binding upon Illinois courts. *City of Chicago v. Groffman* (1977), 68 Ill. 2d 112, 368 N.E.2d 89; *People ex rel. Illinois Federation of Teachers v. Lindberg* (1975), 60 Ill. 2d 266, 326 N.E.2d 749, *cert. denied* (1975), 423 U.S. 839, 46 L. Ed. 2d 58, 96 S. Ct. 67.

## II

The board argues that the enactment of section 34—8.2 of the School Code which authorizes the use of nominating committees in the selection of principals evidences the intent of the legislature that "for merit only" does not mean rank order appointments. The board supports this contention by pointing out that a bill introduced in the General Assembly defining "for merit only" as "an order of standing on eligible lists," was rejected by the House Elementary and Secondary Education Committee. We believe, however, that the failure of a committee of the legislature to act favorably on a proposed bill does not have the same probative value as a rejection by the entire legislative body. See *Order of Railway Conductors of America v. Swan* (1947), 329 U.S. 520, 91 L. Ed. 471, 67 S. Ct. 405.

■■ As we previously noted, when the legislature enacted section 34—8.2 it did not repeal section 34—84, which required appointment for merit only. Generally, repeals or amendments by implication are not favored and will not be upheld unless the terms of the subsequent act are so inconsistent with the provisions of the prior law that they cannot stand together. (*County of DuPage v. Harris* (1967), 89 Ill. App. 2d 101, 231 N.E.2d 195; *Village of Monsanto v. Touchette* (1965), 63 Ill. App. 2d 390, 211 N.E.2d 471, 1A Sutherland, §22.13, at 139-40.) We do not believe that these two provisions are so inconsistent that they cannot co-exist in the School Code. Therefore, the passage of section 34—8.2 of the School Code did not repeal or amend the requirement of rank order appointment as contained in section 34—84 of the School Code and has not rendered moot the issues raised in this case.

■ The board itself, from March to October 1970, employed procedures which resulted in the appointment of principals in rank order and the consideration of the recommendations of local nominating committees.

The procedures were explained in board report 70-926-2, which stated as follows:

"On March 25, 1970, the Board of Education adopted procedures to involve local communities more in the selection of the principal for their school. In general, this selection process has worked well where there is a list of *transfer* applicants for the principalship vacancy under consideration. However, in making assignments from the eligible list, the present practice requires that the number of principal candidates on the eligible list, in order of rank on that list, equal to the number of principalship vacancies being considered be rotated among each school's selection committee for consideration. For example, if there are five schools in need of principals, the next five principal candidates from the eligible list, in order of rank, are presented to these schools for interviews. In practice, the candidate's attractiveness to a committee has not in all instances been in accordance with his rank on the eligibility list."

Because the Chicago public school system encompasses hundreds of schools, principalship vacancies will occur simultaneously. During 1971, 52 principal appointments were made from the 1970 eligibility list. Of these appointments, 11 were made in March, 6 in April, 8 in May, and 17 in September. If the board must make 10 appointments from the eligibility list in a certain month, the local nominating committees can interview the next 10 persons on the list and relay their preferences to the board. In this manner, not only is the board complying with the statutory requirement of rank-order appointment, but it can also consider the particular needs of the individual school in making an appointment.

A significant portion of the intervenors' brief sets forth the advantages of individual consideration of all persons on the eligibility list as opposed to rank order appointments. The intervenors argue that because of the diversity which exists in the schools of Chicago, it is important to consider the particular needs of the individual schools and communities and the qualifications of all eligible persons in order to select the most qualified applicant to serve as principal.

In 1917 the legislature determined that rank-order appointment in the Chicago public school system was an appropriate solution to the problems which existed at that time. If those problems no longer exist or if the solution is unsatisfactory today, it is the responsibility of the legislature to repeal that section of the statute.

For the foregoing reasons, that portion of the judgment order of the Circuit Court of Cook County providing that rank order need not be used by the board as the sole criteria of merit is reversed. The cause is remanded with directions to enter an order that the board of education of the city of Chicago make appointments to the position of principal in

rank order from eligibility lists prepared by the board of examiners, first exhausting the prior 1970 eligibility list before proceeding with any subsequent list.

In view of the above holding it is not necessary for us to consider the plaintiffs' assertion that the trial court erred in permitting members of community organizations and school parents councils to intervene in this suit.

Reversed and remanded with directions.

SIMON, P. J., and McNAMARA, J., concur.